UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NERVORA FASHION, INC.,

                Petitioner,

        v.

ADVANCE MAGAZINE PUBLISHERS
INC.,

                Respondent.

24-CV-4805 (RA)

MEMORANDUM
OPINION &ORDER

RONNIE ABRAMS, United States District Judge:

The Court assumes familiarity with the factual background and procedural history of this case and includes only the facts necessary to address the instant motion. Petitioner Nervora Fashion, Inc. ("Nervora") is a media company operating primarily within the Middle East. Dkt. 45 (the "Petition" or "Pet.") ¶ 2.[1] Respondent Advance Magazine Publishers Inc. d/b/a Condé Nast ("Condé Nast") is a global media company that owns numerous media brands, including *Vogue*. Dkt. 54 ("Mangino Decl.") ¶ 3. In 2016, Nervora and Condé Nast entered into a Brand License Agreement, pursuant to which Nervora became Condé Nast's exclusive licensee of the *Vogue* trademark and related content within certain Middle East territories. Pet. ¶ 3, Dkt. 45-1 (the "Agreement"). This action arises from the parties' dispute over what was to happen following the expiration of the initial term of the Agreement on December 31, 2024. *Id.* ¶ 5.

On June 24, 2024, Nervora filed the Petition for a preliminary injunction, temporary restraining order, and expedited discovery in aid of arbitration against Condé Nast. Dkt. 1.

---

[1] The initial petition was filed in redacted form. Dkt. 1. Condé Nast subsequently filed the Petition at Dkt. 45, which makes certain previously redacted information public. Unless otherwise specified, the Court refers to both filings as the "Petition" or "Pet."

Nervora subsequently sought leave to file redacted versions of the Petition, supporting documents, reply brief, and supplemental declaration, as well as leave to file under seal unredacted versions of the aforementioned documents and certain exhibits to the Petition. *See* Dkts. 10, 17, 30. The Court heard argument regarding the Petition on July 2, 2024. By oral ruling, the Court denied the Petition and ordered the parties to meet and confer regarding the motion to redact and seal. *See* Dkt. 37 ("Tr.") at 28, 35.

After the parties conferred and agreed to release most redactions, Condé Nast filed a new letter motion seeking leave to file redacted versions of the Petition and supporting documents. *See* Dkt. 41. The Court granted the motion in part and denied it in part, giving Condé Nast an opportunity to file a renewed motion providing additional justifications for the specific redactions it sought. *See* Dkt. 49 (the "Prior Opinion"). Condé Nast subsequently filed this renewed motion, now pending before the Court, to file redacted versions of the aforementioned documents, Dkt. 52 (the "Sealing Motion" or "Sealing Mot."), which Nervora opposes, Dkt. 57 ("Opp'n").

Condé Nast now seeks to redact references to (1) certain exclusivity and non-competition provisions in the Agreement, (2) the specific ownership percentage vesting schedule and the respective formulas and percentages for calculating the purchase price under the joint venture provision of the Agreement (collectively, the "Joint Venture Formula"), and (3) the terms of third parties' contracts and agreements with Condé Nast. *See* Sealing Mot. at 2. Condé Nast represents that it has already released a significant amount of previously requested redactions, and maintains that the remaining proposed redactions "are necessary to protect it from suffering from "significant financial and competitive harm." *Id.* at 5; *see also* Dkt. 60 ("Reply") at 2. Condé Nast also seeks to maintain redactions "in connection with the parties' negotiation of a renewal of the agreement, such as the proposed amount for royalty payments," as well as "specific dollar amounts of *Vogue*

revenue, earnings, and similar financial information" and "information that could be used to calculate Condé Nast's revenue."  Sealing Mot. at 2–3.  It contends that these redactions are part of or of the same type as previously authorized by the Court.  *Id.* at 2–3; *see* Prior Opinion at 4. For the reasons that follow, the Court grants Condé Nast's motion.

## LEGAL STANDARD

In evaluating whether to permit redaction of the parties' filings, the Court applies the three-step test set forth in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006).  First, the Court determines whether the documents at issue are "judicial documents."  "A judicial document or judicial record is a filed item that is relevant to the performance of the judicial function and useful in the judicial process."  *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016).[2]  If the documents are deemed judicial in nature, "a common law presumption of access attaches," and the Court next "consider[s] the weight of that presumption." *Lugosch*, 435 F.3d at 119.  This weight is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts."  *United States v. Erie Cnty.*, 763 F.3d 235, 239 (2d Cir. 2014) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)).  The Second Circuit has explained that the presumption of access is "strongest" when the documents "determine litigants' substantive rights, and is weaker where the documents play only a negligible role in the performance of Article III duties."  *Olson v. Major League Baseball*, 29 F.4th 59, 89 (2d Cir. 2022) (quoting *Amodeo*, 71 F.3d at 1049–50).

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and omissions, and adopt alterations.

Finally, the Court balances the weight of the presumption of access with the "competing considerations against" it, denying access "[o]nly when competing interests outweigh the presumption," *Erie Cnty.*, 763 F.3d at 239.  The weight of presumption of access is "particularly strong" where a party seeks to seal information "central to the underlying dispute," *Sylvania*, 2021 WL 412241, at *2, but is tempered where a party attempts to seal material the Court did not rely upon "to shape and inform its analysis," *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 2021 WL 4135007, at *3 (S.D.N.Y. Sept. 10, 2021).

## DISCUSSION

The first factor of the *Lugosch* test is not in dispute.  Condé Nast appears to concede, Sealing Mot. at 2, and the Court agrees, that the documents at issue here are "plainly judicial." *Slyvania v. Ledvance LLC*, 2021 WL 412241, at *1 (S.D.N.Y. Feb. 5, 2021).  Second, because the Petition and supporting documents were "submitted in connection with motions for a temporary restraining order and preliminary injunction," they "directly affect an adjudication, and should thus generally be subject to public scrutiny."  *Vinci Brands LLC v. Coach Servs., Inc.*, 2023 WL 6289969, at *1 (S.D.N.Y. Sept. 27, 2023).  The Court next balances the weight of the presumption of access and the competing interests against it with respect to each category of redactions that Condé Nast seeks to maintain.

### I.   Exclusivity and Non-Competition Provisions

The Court grants Condé Nast's application to redact references to certain portions of the exclusivity and non-competition provisions in the Agreement.  Sealing Mot. at 3.  In support of its motion, Condé Nast submits a declaration from Ms. Amy Mangino, its Executive Director of Strategic Content Initiatives.  *See* Mangino Decl.  Ms. Mangino articulates the confidential nature of the exclusivity provisions and why publicly disclosing those provisions would cause Condé

Nast significant competitive harm.  Mangino Decl. ¶¶ 10, 12–19, 21.  Courts commonly find that "[t]he demonstration of a valid need to protect the confidentiality of such sensitive business information" is a "legitimate basis to rebut the public's presumption of access to judicial documents." *Hanks v. Voya Ret. Ins. & Annuity Co.*, 2020 WL 5813448, at *2 (S.D.N.Y. Sept. 30, 2020); *see also fuboTV Inc. v. Walt Disney Co.*, 2025 WL 19322, at *1 (S.D.N.Y. Jan. 2, 2025) (granting sealing of references to confidential terms of competitively sensitive contracts).  This is especially true when, as here, the specific information Condé Nast seeks to redact "was not required to shape the Court's analysis." *CBF Industria de Gusa S/A*, 2021 WL 4135007, at *4. Indeed, the exclusivity provisions were not mentioned in either party's papers, and were not relied on by the Court when it ruled on the Petition.

Nervora opposes the redaction of these provisions, arguing that Condé Nast fails to explain why the information contained in the 2016 Agreement is still relevant for Condé Nast's business practices.  *See* Opp'n at 2–3.  Condé Nast responds that Ms. Mangino's Declaration "is replete with statements demonstrating that the terms in the [Agreement] are indeed relevant to present day concerns."  Reply at 1.  It is true that, generally, "the older the information is, the less appropriate it is to seal that information." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2023 WL 196134 (S.D.N.Y. Jan. 17, 2023).  But courts also recognize that "[c]onfidential business information dating back even a decade or more may provide valuable insights into a company's current business practices," justifying its sealing. *Encyclopedia Brown Prods., Ltd. v. Home Box Off., Inc.*, 26 F. Supp. 2d 606, 614 (S.D.N.Y. 1998); *see also City of Providence v. BATS Glob. Markets, Inc.*, 2022 WL 539438, at *3 (S.D.N.Y. Feb. 23, 2022) (sealing decade-old document when defendant's declarant avers to its present-day relevance and competitive harm of its

disclosure).  The Court agrees with Condé Nast that the Mangino Declaration sufficiently supports the present-day relevance of the exclusivity provisions in the Agreement.

Specifically, the Mangino Declaration states that "several contractual provisions of the licensing agreements, specifically license fees, exclusivity and joint venture/acquisition (or "buyout") options, are the most contentious, and potential licensees consistently seek and intensely negotiate these particular provisions."  Mangino Decl. ¶ 10.  It further explains that these provisions "are highly coveted and sought after by licensees" and that "if the specifics of these provisions . . . are exposed publicly, it would limit significantly the negotiating power Condé Nast currently has with existing and future licensing partners, as they would use this information to negotiate for more favorable exclusivity provisions and/or joint venture/acquisition option provisions."  *Id.* ¶¶ 12, 16.  Moreover, "[s]ince the size of the media publishing industry is so small, even globally, and specifics on licensing arrangements are closely held by the participants, licensees and Condé Nast, along with their competitors, have limited information on market comparables."  *Id.* ¶ 21. Because the exclusivity and non-competition provisions sought to be redacted "contain[] sensitive information that, if disclosed, might harm [Condé Nast's] competitive standing", the "privacy interests outweigh the public's interest in the redacted material."  *Graczyk v. Verizon Commc'ns, Inc.*, 2020 WL 1435031, at *9 (S.D.N.Y. Mar. 24, 2020).  Accordingly, the Court grants Condé Nast's motion to redact these provisions.

## II.    Joint Venture and Acquisition Options

The Court also grants Condé Nast's application to redact references to the Joint Venture Formula, including the specific dollar amount generated by it.  Sealing Mot. at 3.  The formula is used to calculate the purchase price that Condé Nast would have to pay under the joint venture option in the Agreement.  Courts "commonly seal[] documents" containing "pricing information,

and the like." *Kewazinga Corp. v. Microsoft Corp.*, 2021 WL 1222122, at *6 (S.D.N.Y. Mar. 31, 2021); *see also Hesse v. SunGard Sys. Int'l*, 2013 WL 174403 (S.D.N.Y. Jan. 14, 2013) (sealing emails referencing company's project pricing); *ExxonMobil Oil Corp. v. JA Dakis Cap. LLC*, 2024 WL 1702383, at * 2 (S.D.N.Y. Apr. 18, 2024) (sealing contract "contain[ing] sensitive terms and conditions and pricing information").

Moreover, like with the exclusivity and non-competition provisions, the Court finds that the Mangino Declaration sufficiently supports the request to redact the Joint Venture Formula, *see* Mangino Decl, ¶¶ 10–11, 15–19, 21, the terms of which were applicable throughout the eight-year life of the Agreement. As explained in the Mangino Declaration, public disclosure of these provisions "would cause significant harm to [Condé Nast's] competitive business standing," which justifies their redaction. *Lively v. Wayfarer Studios LLC*, 2026 WL 145483, at *3 (S.D.N.Y. Jan. 20, 2026); *see also Regeneron Pharms., Inc. v. Novartis Pharma AG*, 2021 WL 243943, at *2 (S.D.N.Y. Jan. 25, 2021) (sealing references to confidential business information from and relating to agreements when "disclosure of the economic terms of the parties' various licensing and/or commercial agreements could disadvantage them in future negotiations with third parties with respect to similar agreements").

It is true that in the Prior Opinion, the Court found that "the availability of a buyout was discussed at oral argument . . . and an understanding of the buyout provision is thus relevant to the public reaching a full understanding of the Court's analysis." Prior Opinion at 7. Condé Nast, however, has since unredacted the majority of the buyout provisions of the Agreement, and now seeks only to redact the specific formula used to calculate the purchase price.[3] Sealing Mot. at 2;

---

[3] Nervora specifically opposes the redaction of the "critical last sentence of Section 14.4 addressing timing related to a buy-out." Opp'n at 4. In its Reply, Condé Nast represents that it "intended to unredact the last sentence of Section 14.4 and inadvertently did not do so in one of the multiple instances where that paragraph appears in the various filings." Reply at 4 n.1. Condé Nast has submitted "a revised version of that particular page with the last sentence

Reply at 3–4; Mangino Decl. Ex. 3, Dkt. 54-3.  Neither party's filings referenced the Joint Venture Formula, nor was it mentioned in the oral argument, and the Court did not rely on it to shape or form its analysis.  Therefore, the Joint Venture Formula, along with the precise "dollar figures and amounts" generated by it, "ha[d] little or no bearing on the merits of the parties' dispute," and "sealing that information will not meaningfully hinder those monitoring the federal courts." *Banco Santander (Brasil), S.A. v. Am. Airlines, Inc.*, 2020 WL 4926271, at *3 (E.D.N.Y. Aug. 21, 2020) (quoting *Bernstein*, 814 F.3d at 142).  Accordingly, the Court grants Condé Nast's motion to redact these portions of the filings.

### III.    Third-Party Information

The Court next grants Condé Nast's application to redact references to the terms of its contracts and agreements with third parties as well.  "The privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation." *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995).  The passing references to the terms of third-party contracts that Condé Nast seeks to redact appeared on limited occasions throughout the parties' filings and do not bear on the issues in this action.  The proposed redactions are thus "narrowly tailored" to "preserve higher values." *Lugosch*, 435 F.3d at 124.  Therefore, the Court grants Condé Nast's application to redact these references.

### IV.    Financial Information

Finally, the Court further grants Condé Nast's application to maintain redactions of its financial information.  In the Prior Opinion, the Court granted Condé Nast's application "to redact its financial projections, earnings, revenue, royalty payments, direct expenses, and negotiations

---

unredacted." *Id.*  Because Condé Nast agrees to make this portion of the Agreement public, the Court does not address Nervora's related arguments.

8

regarding these items." Prior Opinion at 4. Condé Nast now seeks to redact "[r]eferences to the same type of information, in connection with the parties' negotiation of a renewal of the agreement, such as the proposed amount for royalty payments . . . as well as specific dollar amounts of *Vogue* revenue, earnings, and similar financial information such as event revenue, and information that could be used to calculate Condé Nast's revenue." Sealing Mot. at 1–2. After a careful review of the proposed redactions, the Court finds that these references are either part of Condé Nast's financial information that the Court already allowed to be redacted, or of the same nature. For the reasons stated in the Prior Opinion, the Court grants Condé Nast's application to preserve these redactions. *See* Prior Opinion at 4.

## CONCLUSION

For the foregoing reasons, Condé Nast's sealing motion is granted in its entirety. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 52. The parties shall inform the Court by no later than April 13, 2026 whether this case can be closed.

SO ORDERED.

Dated:      March 30, 2026
            New York, New York

_____
Hon. Ronnie Abrams
United States District Judge

9